523 N.W.2d 510 (1994)
246 Neb. 787
Max HOLMAN and Rose M. Holman, Appellees,
v.
PAPIO-MISSOURI RIVER NATURAL RESOURCES DISTRICT, Appellant.
No. S-93-407.
Supreme Court of Nebraska.
November 4, 1994.
*513 Paul F. Peters, of Schmid, Mooney & Frederick, Omaha, for appellant.
Dixon G. Adams, Papillion, for appellees.
HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ., and BOSLAUGH, J., Retired.
CAPORALE, Justice.

I. STATEMENT OF CASE
After our determination in Holman v. Papio Nat. Resources Dist, 228 Neb. 94, 421 N.W.2d 430 (1988) (Holman I), that the Papio-Missouri River Natural Resources District, the defendant-appellant herein, was to be enjoined from obstructing a natural drainage ditch along land owned by the plaintiffs-appellees in this case, Max Holman and Rose M. Holman, the district condemned an easement over and across the land. Being dissatisfied with the $21,500 award of the county court appraisers, the Holmans appealed to the district court. In seeking to overturn that court's judgment on the verdict in the sum of $95,000, the district appealed to the Nebraska Court of Appeals, asserting that the district court, hereinafter referred to as the trial court, erred in (1) refusing to strike certain evidence, (2) refusing to receive certain evidence, (3) failing to direct a verdict in the district's favor at the close of the Holmans' case, and (4) calculating the interest due on the judgment. We removed the matter to this court in order to *514 regulate the caseloads of the two appellate courts. We now affirm.

II. SCOPE OF REVIEW
A condemnation action is reviewed as an action at law, in connection with which a verdict will not be disturbed unless it is clearly wrong. See Lincoln Branch, Inc. v. City of Lincoln, 245 Neb. 272, 512 N.W.2d 379 (1994). Moreover, in determining the sufficiency of the evidence to sustain a verdict, the evidence must be considered most favorably to the successful party, every controverted fact must be resolved in the successful party's favor, and the successful party is entitled to the benefit of any inferences reasonably deducible from the evidence. See id.

III. BACKGROUND
While the district has made no complaint in this regard, we nonetheless begin our recitation of the record by observing that at times the trial court curtailed the district's effort to make the record it wished to make. If there was ever any doubt, it should by now be abundantly clear to all that it is not the trial court's prerogative to decide what the trial record shall be. Upon request, a litigant is entitled to a verbatim record of anything and everything which is said by anyone in the course of judicial proceedings; it is the duty of the court reporter to make such a record, and it is the obligation of the trial court to see to it that the reporter accurately fulfills that duty. See, In re Complaint Against Staley, 241 Neb. 152, 486 N.W.2d 886 (1992); State v. Bradley, 236 Neb. 371, 461 N.W.2d 524 (1990); Kennedy v. Kennedy, 221 Neb. 724, 380 N.W.2d 300 (1986); Neb.Ct.R. of Official Ct.Rptrs. 4 (rev. 1992).
That having been noted, the record viewed most favorably to the Holmans establishes that their land consists of 44 acres bounded on the south by the Platte River, on the east by U.S. Highway 73-75, and on the north and west by a natural drainage ditch which flows east through a culvert under the highway.
By the time of Holman I, the district had placed a floodgate at the west end of the culvert adjacent to the northeast corner of the Holmans' land. The easement it later took gives the district the right to close the floodgate if both the Platte River level, as measured at either of two designated points, and water in the culvert reach a described level. The district must reopen the floodgate when the water at both of the designated points on the river subsides to a specified level.
The land is lakefront property in the sense that two lakes were created when a former occupier mined the land for its sand and gravel. The boundaries of the property were diked with the removed topsoil, and according to Max Holman, who first became acquainted with the land in the 1930's, the property had not flooded until 1984, when the district closed its floodgate.
Robert E. Dreessen, a licensed professional civil engineer with 30 years' experience in construction of drainage structures affecting highways and with water runoff, soil mechanics, percolation of water, and storm sewers and similar systems, and who had worked on pumped-out gravel pits which were turned into housing subdivisions, testified that in his opinion the closing of the district's floodgate under the conditions specified in the easement would cause a significant amount of water to be deposited and accumulate upon the Holmans' land. It was also Dreessen's opinion that because of the increased likelihood of periodic flooding of the Holmans' land, the feasibility for the land's development as lakefront residential property under two proposals he made before the district's taking of the easement was "diminished," "probably not ... feasible," "seriously jeopardized," and "not feasible without additional economic analysis."
Mark Rubin is a licensed real estate salesperson and broker who has developed land, serves on the Sarpy County Planning Commission, and has served as its chairperson. In his opinion, the highest and best use of the Holmans' land was that of lakefront residential use. Relying on Dreessen's opinions that a significant accumulation of water would result from the easement and that the two proposals Dreessen had made for lake-front *515 residential use were infeasible, the before taking value of $436,750 for the property had been reduced to $30,000, a difference of $406,750.
Michael Yudelson is a law school graduate who spent 20 years with the estate tax division of the Internal Revenue Service, where he was required to value all types of property, including real estate, as well as study the effect on values of restrictions such as easements. He has also taught real estate valuation. Upon retirement from the Internal Revenue Service, he became affiliated with a shopping center developer, where he is concerned with land acquisitions and in connection with which he is called upon to value real estate. Relying on Dreessen's opinion that the easement made development infeasible, it was Yudelson's opinion that the $413,000 before taking value of the real estate had been reduced by the easement to $130,000, a difference of $283,000.
The district's evidence was that prior to the sandpits being dug, the Holmans' land flooded every time the river came up, almost every year. The terms of the easement are such that the floodgate can be closed only when a Platte River flood is in progress. The Holmans' land was exposed to flooding before the district's taking of the easement because of percolation of water from the river. As a result, any water entering upon the Holmans' property due to closing the floodgate would be insignificant. According to the district's evidence, the $380,000 value of the land before the taking was unaffected by the easement.

IV. ANALYSIS
With that background, we turn to the district's assignments of error, providing such additional facts as are required for the resolution of each issue.

1. REFUSAL TO STRIKE EVIDENCE
In connection with its first assignment of error, the district urges that Dreessen's opinion that the closing of the floodgate would result in "significant accumulation" of water on the Holmans' land should have been stricken pursuant to its motion. The district urges that the opinion was based on nothing more than speculation and conjecture in that Dreessen did not empirically account for other sources of water inflow into the property, namely percolation resulting from a hydrological balance between the property and the Platte River. The district further contends that because of the speculative nature of Dreessen's opinion that there would be significant water accumulation on the Holmans' property resulting from the closing of the floodgate, there was no basis for his opinion concerning the effect on the developability of the property and thus no basis for the opinions of Rubin and Yudelson concerning the diminution in the value of the property. Furthermore, the district contends that there was an insufficient basis for the opinions of Rubin and Yudelson, since their opinions were based on Dreessen's vacillating characterization of the effect of the easement on the developability of the land.

(a) Dreessen's Opinions
Dreessen acknowledged that there was percolation, that is, that as "long as the water surface of the Platte is higher than the water surface of the lake, there will be some movement of water through the sand toward the lake," and that the ultimate effect would be a rise in the level of the lakes on the Holmans' land. It was his view, however, that the water in the aquifer moves much slower than flowing surface water. Although Dreessen would not attempt to estimate the amount of water that would percolate under the dikes during a flood, he did estimate that percolation would be slow in the area of the culvert.
With the floodgate closed, the water level in the drainage ditch next to the floodgate would be higher than with the floodgate open and would tend to rise to the level of the elevation of the water upstream to the west where the ditch runs into the river. The water going over the dike would be higher than the floodwater, in that it would be equal to the floodwater at the northwest corner of the property where the drainage begins from the river. Thus, the gradient down from the west side of the property to the east would be nullified by the damming up of the water.
It is true that where an expert's opinion does not have a sound and reasonable *516 basis such that the expert is able to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture, the opinion should be stricken. See Clearwater Corp. v. City of Lincoln, 202 Neb. 796, 277 N.W.2d 236 (1979), appeal after remand 207 Neb. 750, 301 N.W.2d 328 (1981). On the other hand, an appellate court is not a superexpert and will not lay down categorically which factors and principles an expert may or may not consider. Such matters go to the weight and credibility of the opinion itself and not to its admissibility. Palmer v. Forney, 230 Neb. 1, 429 N.W.2d 712 (1988).
The dispute here is not over whether Dreessen had the appropriate facts in hand, but over what considerations were appropriate. Under the circumstances of this case, that was a matter going to the weight of Dreessen's opinion, not its admissibility.
Nor is it fatal to the Holmans' cause, as the district suggests, that neither Dreessen nor any other witness attempted to determine exactly how much additional water would be discharged upon and accumulate on the Holmans' land at any given time solely because of the closing of the floodgate. As the district acknowledges, when water from another source has been added to water from a source for which a defendant is liable and the combined water causes damage, it is incumbent upon the plaintiff to establish either that the entire damage would have occurred from the water for which the defendant is liable or to establish what amount of damage was caused by the water for which the defendant is liable. Holman I, supra.
Here, the Holmans' evidence is that but for the additional discharge and accumulation of water because of the easement, the Holmans' land could have been developed in a fashion that it now cannot. Thus, the evidence is that the entire diminution in the value of the land is occasioned by the easement; that is to say, the entire damage occurred because of the additional water discharged by the district. The trial court thus correctly refused to strike Dreessen's opinions.

(b) Rubin's and Yudelson's Opinions
Having resolved the first prong of the district's position concerning the value opinions rendered by Rubin and Yudelson, we reach the second prong in which the district complains of Dreessen's arguably inconsistent characterization of the effect of the easement on the developability of the Holmans' land.
We begin by noting that where, for other than bad faith motives, the testimony of the same expert is conflicting, it rests with the trier of fact to resolve the conflict. See, Brandt v. Leon Plastics, Inc., 240 Neb. 517, 483 N.W.2d 523 (1992); McVaney v. Baird, Holm, McEachen, 237 Neb. 451, 466 N.W.2d 499 (1991). No bad faith motives have been attributed to Dreessen.
Moreover, Rubin testified that he did not recall that Dreessen had said the developability of the property was "diminished" as opposed to "infeasible." Nor could he recall the exact words "seriously jeopardized" having been used. He understood Dreessen's opinion to be that because of the presence of additional water due to the closing of the floodgate, the taking rendered development of the residential lot plans infeasible such that the two development schemes possible before the taking could not be implemented.
Yudelson testified that Dreessen had told him that developability would be made infeasible rather than diminished. Neither did he remember the word "jeopardized" being used by Dreessen. In any event, Yudelson felt that the difference in description was a matter of semantics rather than substance.
Yudelson explained that for the purposes of making his appraisal, there was no difference between diminished and infeasible because he was testifying as to the effect the additional accumulation of water had on the value of the land developed in accordance with one or the other of the two schemes possible before the taking and the value of the land absent either of those schemes.
As the jury was entitled to resolve Dreessen's characterization of the effect of the easement and to assess its impact on the opinions expressed by Rubin and Yudelson, *517 the trial court correctly refused to strike their testimony in this regard.

(c) Resolution
Accordingly, the first assignment of error is resolved against the district.

2. REFUSAL TO RECEIVE EVIDENCE
In the second assignment of error, the district urges that the trial court mistakenly refused to receive into evidence an exhibit containing Max Holman's pretaking representations to the board of equalization that the tax value of his property was but $160,145; that most of the area was sand, gravel, and water; and that only 16 acres consisted of land.
As we understand the argument, it is that the exhibit should have been received under Neb.Evid.R. 801(4)(b)(i), Neb.Rev.Stat. § 27-801(4)(b)(i) (Reissue 1989), which excludes from the definition of hearsay a statement offered against a party which is the party's own statement, referred to as the "admissions of a party-opponent" exception to the hearsay rule. See Neb.Evid.R. 613, Neb. Rev.Stat. § 27-613 (Reissue 1989).
This case presents a different situation than that presented in Lienemann v. City of Omaha, 191 Neb. 442, 215 N.W.2d 893 (1974), wherein we ruled that the condemner could not introduce the tax assessment into evidence. Here, the district wishes to introduce what Max Holman said about the tax value of his own property. Nonetheless, Lienemann rests on the principle that the value of land for tax purposes is generally not admissible as direct evidence of value for purposes other than taxation. Lienemann recognizes that while real estate generally is to be taxed on the basis of its actual value, Neb.Rev.Stat. § 77-201 (Cum.Supp.1992), other factors, such as matters of uniformity and proportionality, Neb.Const. art. VIII, § 1, come into play which do not come into play otherwise. As a consequence, in any given case the tax value may be less than the market value. Konicek v. Board of Equalization, 212 Neb. 648, 324 N.W.2d 815 (1982). Thus, Max Holman's opinion as to what the tax value of his property was is not relevant as to its value for other purposes and was not admissible even as indirect evidence in the form of the admission of a party-opponent.
The situation might be different with respect to Max Holman's representations as to the physical attributes of the property. But we do not reach that issue, for the district made no separate offer of the exhibit with the reference to the tax value removed. If an exhibit is only admissible in part, it is incumbent on the offeror to select and offer only the admissible part; if one offers both the admissible and inadmissible parts, the trial court may reject the entire offer. See, Ferlise v. Raznick, 202 Neb. 745, 277 N.W.2d 94 (1979); 1 McCormick on Evidence § 51 (John W. Strong 4th ed. 1992).
While the district specifically contends that it was "prevented from interrogating [Max Holman] concerning" his representations to the board, the district does not direct us to, and we do not find, any place in the record where it attempted such an interrogation. Just as we cannot know how the trial court would have ruled on an objection to an offer of only a portion of the excluded exhibit, neither can we know how the trial court would have ruled on an objection not made to a question not posed. See Sherman County Bank v. Kallhoff, 205 Neb. 392, 288 N.W.2d 24 (1980) (only when substance of excluded evidence apparent from context of question that offer of proof not necessary in order to predicate error).
Thus, the second assignment of error must also be resolved against the district.

3. REFUSAL TO DIRECT VERDICT
The short answer to the district's complaint in the third assignment of error, the trial court's refusal to direct a verdict in the district's favor at the close of the Holmans' case, is that by thereafter introducing evidence, the district waived any error in that ruling. Palmtag v. Gartner Constr. Co., 245 Neb. 405, 513 N.W.2d 495 (1994) (defendant who moves for directed verdict at close of plaintiff's evidence, and upon overruling of motion proceeds with trial, waives any error on motion).
*518 Beyond that, in order to sustain a motion for directed verdict, the trial court must resolve the controversy as a matter of law and is to do so only when the facts are such that reasonable minds can draw only one conclusion; in considering the evidence for the purposes of a directed verdict motion, the party against whom the motion is made is entitled to have the benefit of every inference which can reasonably be drawn from the evidence, and the case may not be decided as a matter of law if there is any evidence in favor of the party against whom the motion is made. Lindsay Mfg. Co. v. Universal Surety Co., ante 246 Neb. 495, 519 N.W.2d 530 (1994); Baker v. St. Paul Fire & Marine Ins. Co., 240 Neb. 14, 480 N.W.2d 192 (1992). The resolution in subpart 1 of the district's first assignment of error demonstrates that the facts were not such that reasonable minds could draw only one conclusion. Thus, it would have been error for the trial court to have sustained the district's motion.
Therefore, the district's third assignment of error is resolved against the district as well.

4. INTEREST CALCULATION
In the fourth and last assignment of error, the district claims the trial court improperly calculated the interest due on the judgment at 14 percent per annum.
To the extent relevant, Neb.Rev.Stat. § 76-711 (Reissue 1993) provides that in an appeal taken by the condemnee from the award of the appraisers, the condemnee shall be entitled to interest at the rate provided by Neb.Rev.Stat. § 45-104.02 (Reissue 1993) "as such rate may from time to time be adjusted." Section 45-104.02 provides that the interest rate "shall be redetermined every other year"
by the Tax Commissioner and shall be equal to the average short-term borrowing rate for the federal government during July of the previous year rounded to the nearest whole percentage point plus three percentage points. If the new rate does not increase or decrease the old rate by at least two percentage points, the old rate shall continue in effect.
However, we find no evidence in the record which permits us to rule that the trial court erred in using 14 percent in computing the interest due.
Consequently, as with the previous assignments of error, the fourth assignment must be resolved against the district.

V. JUDGMENT
The record failing to sustain any of the district's assignments of error, the judgment of the trial court is, as first noted in part I, affirmed.
AFFIRMED.