COURT OF APPEALS OF VIRGINIA

Present:  Judges Baker, Benton, Coleman, Willis, Elder, Bray,
          Fitzpatrick, Annunziata and Overton
Argued at Richmond, Virginia


KATINA LYNN ZELENAK
                                          OPINION BY
v.        Record No. 1816-94-3    JUDGE ROSEMARIE ANNUNZIATA
                                          JULY 22, 1997
COMMONWEALTH OF VIRGINIA


                    UPON A REHEARING EN BANC

          FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
                    Kenneth I. Devore, Judge


          Frederick M. Kellerman, Jr. (Long & Long, on
          brief), for appellant.

          Daniel J. Munroe, Assistant Attorney General
          (James S. Gilmore, III, Attorney General;
          Leah A. Darron, Assistant Attorney General,
          on brief), for appellee.



     On September 24, 1996, a panel of this Court reversed the

convictions of Katina Lynn Zelenak for attempted robbery,

conspiracy to commit robbery and a related firearms charge on the

ground that the trial court erred in refusing to admit certain

testimony of Zelenak's expert witness.  Zelenak v. Commonwealth,

23 Va. App. 259, 475 S.E.2d 853 (1996).  The panel affirmed the

trial court with respect to Zelenak's further contentions that

the trial court erred in permitting the Commonwealth to use a

competency report to impeach her and in refusing to admit the

statement of an alleged co-conspirator.  Upon rehearing en banc,

we affirm Zelenak's convictions.

## I.

At 2:00 a.m., a manager of a pizza restaurant was making a night deposit at a bank when a man with a gun approached him. After the gunman said, "Hold it," the manager jumped into his vehicle and called the police using his cellular telephone. A vehicle then entered the bank parking lot, continued to the back of the bank where the gunman had run, and sped away. As the manager followed the automobile, the police arrived and stopped the automobile. The police arrested the driver, Katina Zelenak, and the two men with her, William Smith, the gunman, and Paul Morehead. Zelenak and the two men were indicted for attempted robbery, use of a firearm during the attempted robbery, and conspiracy to commit robbery.

## II.

On motion of Zelenak's counsel prior to trial, the trial court ordered Zelenak to undergo a psychological analysis to determine her competency to stand trial. Zelenak also filed a notice of intent to present an insanity defense. Later, after Zelenak withdrew the notice of intent to present an insanity defense, the Commonwealth moved in limine to prohibit the expert testimony of Gwynn Polidoro, a licensed clinical social worker. The Commonwealth argued that Polidoro's testimony would be offered by Zelenak as proof of an ultimate issue of fact because it addressed Zelenak's state of mind at the time of the offense. Defense counsel responded that Polidoro would testify that

-2-

Zelenak suffers from multiple personality disorder, a dissociative disorder that resulted from traumatic stress, which made her "susceptible to duress." The trial court deferred ruling on the motion until trial.

Zelenak's defense at trial was that she participated in the crimes out of fear that Morehead would kill her or a member of her family. At trial, appellant proffered that Polidoro would testify that

> [Zelenak] was in such a fear of Mr. Morehead at most times that at any given time she was afraid that if she didn't go along with what he was saying that she was going to be harmed and that would carry through the time of the offenses, as well as before that and after that.

The court granted the Commonwealth's motion to exclude Polidoro's testimony but allowed defense counsel to further proffer the expert's testimony. In chambers, the defense proffered that Polidoro would testify, inter alia, that

> [i]n her most recent relationship with Paul, she became very attached to him almost immediately. She has revealed mixed, revealed episodes of violent sexual exploration, humiliation mixed with feelings of specialness, specialness. She idolizes him on one point and seems to be very afraid of him on the other. In my opinion, she got to the point where she believed escape from him or disobedience would result in her death or the death of a family member.

At the conclusion of the evidence, the jury convicted Zelenak on all three charges. Zelenak contends that the trial court erred in not allowing Polidoro's testimony. We disagree.

An expert witness may express an opinion relative to the existence or nonexistence of facts not within common knowledge, but "the admission of expert opinion upon an ultimate issue of fact is impermissible because it invades the function of the fact finder." Llamera v. Commonwealth, 243 Va. 262, 264, 414 S.E.2d 597, 598 (1992). In Llamera, the Supreme Court held that the trial court erred in allowing an expert witness to state that ninety-three grams of cocaine packaged in a number of separate plastic "baggies" had been "packaged that way for distribution" and that the quantity of cocaine found "would suggest that the owner of the cocaine was a person who sold cocaine." Id. The Court reversed Llamera's conviction for possession with intent to distribute, reasoning that the expert expressed an opinion on one of the ultimate issues, viz., intent to distribute. Id. at 265, 414 S.E.2d at 599. The Court rejected the Commonwealth's contention that the expert's use of the word "suggest" was a qualification, not a statement of fact. Id. at 264-65, 414 S.E.2d at 598-99. See also Bond v. Commonwealth, 226 Va. 534, 536-39, 311 S.E.2d 769, 770-72 (1984) (trial court in murder case erred in admitting report of medical examiner which ruled out possibility that victim's death resulting from a four-story fall was caused by either accident or suicide); Ramsey v. Commonwealth, 200 Va. 245, 249-52, 105 S.E.2d 155, 158-60 (1958) (trial court erred in allowing expert in arson case to conclude, based upon set of hypothetical facts, that fire was of incendiary

origin).

In the present case, appellant asserted the defense of duress. "The common law defense of duress excuses acts which would otherwise constitute a crime, where the defendant shows that the acts were the product of threats inducing a reasonable fear of immediate death or serious bodily injury." Pancoast v. Commonwealth, 2 Va. App. 28, 33, 340 S.E.2d 833, 836 (1986). Accordingly, whether appellant acted under duress was the "precise and ultimate issue in the case," upon which expert opinion could not be expressed. See Cartera v. Commonwealth, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978) (reversing rape conviction where medical expert allowed to express opinion that victims had been raped). To support a defense of duress, appellant had to demonstrate that her criminal conduct was the product of Morehead's unlawful threat that caused her reasonably to believe that performing the criminal conduct was her only reasonable opportunity to avoid imminent death or serious bodily harm, either to herself or another. See Daung Sam v. Commonwealth, 13 Va. App. 312, 324, 411 S.E.2d 832, 839 (1991).

Appellant proffered that her psychologist would testify, inter alia, that appellant suffered from a disorder which made her "susceptible to duress," that Zelenak so feared Morehead at the time of the offense that she believed she would be harmed if she did not comply with his demands, and that Zelenak reached a point where she believed escape from Morehead or disobedience to

him would result in her death or death of a family member.  The
proffered testimony expresses an opinion on the precise and
ultimate issue in this case and was, therefore, properly excluded
by the trial court.[1]

### III.

Prior to Zelenak's testimony in her defense, her counsel
moved to prohibit the Commonwealth from cross-examining Zelenak
concerning statements made by her during the competency
evaluation.  The defense claimed the questioning would establish
Zelenak's state of mind at the time of the offense, in violation
of Code § 19.2-169.7.  The Commonwealth argued that the
evaluation would be used for impeachment purposes only.  Because
the court reporter changed tapes when the trial court ruled, the
transcript does not contain the ruling on this issue.

After Zelenak testified in her own defense, the Commonwealth
called her as a rebuttal witness.  When asked if there was, "Some
reason you don't like [your family] or wouldn't care whether

---

[1]We find no support for the suggestion of the dissent, to
the extent it can be so read, to impose a duty on the trial court
to cull the "relevant and probative portions" of the proffer and
admit only that testimony.  See, e.g., Donavant v. Hudspeth, 347
S.E.2d 797, 812-13 (N.C. 1986) ("when an offer of evidence is
made, some of which is admissible and some of which is
inadmissible, it is not the responsibility of the trial judge to
separate the admissible from the inadmissible evidence, and in
the absence of an appropriately-limited offer by the proponent of
the evidence, the trial judge's ruling excluding the evidence
will be upheld on appeal"); Dunn v. Wal-Mart Stores, Inc., 909
S.W.2d 728, 735 (Mo. Ct. App. 1995); Holman v. Papio-Missouri
River Natural Resources Dist., 523 N.W.2d 510, 510 (Neb. 1994);
Pennington v. Brock, 841 S.W.2d 127, 132 (Tex. Ct. App. 1992).

anything happened to them," she responded, "No, I love my family very much." Over defense counsel's objection, the Commonwealth then inquired whether she had told psychologists that members of her family had physically and sexually abused her. Zelenak contends the trial court erred in allowing the Commonwealth to impeach her testimony with statements she made during the competency evaluation. We disagree.

> Code § 19.2-169.7 provides:
> No statement or disclosure by the defendant concerning the alleged offense made during a competency evaluation ordered pursuant to § 19.2-169.1, a mental state at the time of the offense evaluation ordered pursuant to § 19.2-169.5, or treatment ordered pursuant to § 19.2-169.2 or § 19.2-169.6 may be used against the defendant at trial as evidence or as a basis for such evidence, except on the issue of his mental condition at the time of the offense after he raises the issue pursuant to § 19.2-168.

Code § 19.2-169.7 explicitly refers to statements "concerning the alleged offense." Zelenak admits that the questions at issue did not directly relate to the offense but claims they are irrelevant and highly prejudicial. In view of Zelenak's concession that the questions did not directly relate to the offense and in the absence of a record of the trial court's ruling, which is presumed to be correct, Justis v. Young, 202 Va. 631, 632, 119 S.E.2d 255, 256-57 (1961), we affirm the trial court's decision.

IV.

At trial, Zelenak attempted to call James Bane to testify about a statement concerning the offenses Morehead made while in

-7-

jail.  Defense counsel characterized the statement as an admission against Morehead's interest and also contended that the statement was made in furtherance of the conspiracy.  The trial court ruled that the conspiracy ended prior to the time the statement was made and that the statement was inadmissible hearsay.

The record on appeal, however, does not disclose the content of the statement Morehead may have made to Bane.  "It is well settled that when a party's evidence has been ruled inadmissible, the party must proffer or avouch the evidence for the record in order to preserve the ruling for appeal; otherwise, the appellate court has no basis to decide whether the evidence was admissible."  Smith v. Hylton, 14 Va. App. 354, 357-58, 416 S.E.2d 712, 715 (1992).  Accordingly, the trial court's ruling is affirmed.

For the foregoing reasons, Zelenak's convictions are affirmed.

Affirmed.

Benton, J., with whom Elder, J., joins, dissenting.

The rule is well settled that an expert witness in a criminal trial "may not express an opinion as to the ultimate issue to be determined by the trier of fact." Price v. Commonwealth, 18 Va. App. 760, 764, 446 S.E.2d 642, 645 (1994); see Bond v. Commonwealth, 226 Va. 534, 538, 311 S.E.2d 769, 771-72 (1984). Equally well settled is the rule that an expert in a criminal case may "testify on the basis of [the expert's] own personal observations or on the basis of evidence adduced at trial." Buchanan v. Commonwealth, 238 Va. 389, 416, 384 S.E.2d 757, 773 (1989). Because the testimony of Gwynn Polidoro, a licensed clinical social worker, did not express an opinion on the ultimate issue, I would hold that the trial judge erred in excluding her testimony.

"The common law defense of duress excuses acts which would otherwise constitute a crime, where the defendant shows that the acts were the product of threats inducing a reasonable fear of immediate death or serious bodily injury." Pancoast v. Commonwealth, 2 Va. App. 28, 33, 340 S.E.2d 833, 836 (1986).

> To support a defense of duress, a defendant must demonstrate that [her] criminal conduct was the product of an unlawful threat that caused [her] reasonably to believe that performing the criminal conduct was [her] only reasonable opportunity to avoid imminent death or serious bodily harm, either to [her]self or to another.

Daung Sam v. Commonwealth, 13 Va. App. 312, 324, 411 S.E.2d 832, 839 (1991).

-9-

To determine whether Zelenak acted under duress, the jury had to decide if Zelenak "reasonably feared that [her] refusal to participate in the [crimes] . . . would have resulted in imminent death or serious injury to [herself or her] family." Id. at 324, 411 S.E.2d at 839 (emphasis omitted).  The proffer by defense counsel reveals that the expert would have provided information concerning Zelenak's past experiences and overall mental condition relevant to that inquiry.  Defense counsel proffered that the expert would testify as follows:

> If [Ms. Polidoro] was to testify she would observe that Mrs. Zelenak has revealed abuse and exposure to violence from the time she was a child unto her arrest.  That she has a series of intense, but unstable relationships.  That she has repeatedly looked for a rescuer for someone who would love her and has repeatedly failed to protect herself as an adult . . . .  She has a reported sense of helplessness and lack of initiative saying she has difficulty making decisions.  In her most recent relationship with [Morehead], she became very attached to him almost immediately.  She has revealed mixed, revealed episodes of violent sexual exploration, humiliation mixed with feelings of specialness . . . .  She idolizes him on one point and seems to be very afraid of him on the other.  In my opinion, she got to the point where she believed escape from him or disobedience would result in her death or the death of a family member.

The proffer contained no expression of an opinion that, on the day in question, Zelenak reasonably believed that committing the crime was the only way to avoid serious bodily harm.  Rather, the proffer concerned Zelenak's overall mental condition and past experiences relating to manipulation and intimidation.  The

expert's testimony would have explained circumstances and factors from which a jury might have found a basis to believe Zelenak was susceptible to intimidation and manipulation. Thus, the evidence could have provided a basis for the jury to find that Zelenak acted because of a fear of Morehead. Such a finding would have tended to establish Zelenak's defense of duress.

The testimony also would have provided information tending to show that Zelenak's fear was reasonable. See McGhee v. Commonwealth, 219 Va. 560, 562, 248 S.E.2d 808, 810 (1978) ("'"What reasonably appeared to the accused at the time of the [criminal act], as creating the necessity for [her] act, is the test and not what reasonably appeared to [her], provided it would so appear to some other reasonable person under similar circumstances."'") (citation omitted). In ascertaining whether Zelenak acted out of a subjectively reasonable fear, Zelenak's past experiences and mental condition were relevant in determining what compelled her to commit the offense. Indeed, in the civil context, the Supreme Court has stated that the question of duress "'is to be determined on consideration of the surrounding circumstances such as age, sex, capacity, situation, and relation of the parties.'" Jacobs v. Jacobs, 218 Va. 264, 267, 237 S.E.2d 124, 126 (1977) (citation omitted).

In this case, where the defense claimed Zelenak had been abused previously, the jury, upon proper evidence, might have found that Zelenak reasonably believed that a failure to commit

-11-

the offenses would result in death or serious injury.  Therefore, I would hold that the trial judge erred in refusing to admit the relevant and probative portions of Polidoro's testimony that would have explained Zelenak's susceptibility to duress.[2]  If

[2]Nothing in the proffer states an opinion on the ultimate issue.  In its entirety, the proffer was as follows:

> Ms. Polidoro by education has a bachelor's degree from Wesleyan College and a master's in social work from the University of Georgia.  She's licensed in the State of Virginia as a Clinical Social Worker.  She's a board certified diplomate in clinical social work.  She's a member of the Academy of Certified Social Workers.  She's a member of the International Society for the Study of Multiple Personality and Dissociation and is a former member of the Board of Directors of the Women's Resource Center.  She has quite extensive background of continuing education and serves as one of the local main resource people on multiple personalities and dissociative orders.  If she was to testify she would observe that Mrs. Zelenak has revealed abuse and exposure to violence from the time she was a child unto her arrest.  That she has a series of intense, but unstable relationships.  That she has repeatedly looked for a rescuer for someone who would love her and has repeatedly failed to protect herself as an adult.  That she would, reports both inhibited sexuality and compulsive sexuality.  There is evidence of self-blame, shame, guilt and a pattern of attempting to protect family members and partners.  She has a reported sense of helplessness and lack of initiative saying she has difficulty making decisions.  In her most recent relationship with Paul, she became very attached to him almost immediately.  She has revealed mixed, revealed episodes of violent sexual exploration, humiliation mixed with feelings of specialness, specialness.  She idolizes him on one point and seems to be very afraid of him on the other.  In my opinion, she got

this evidence had been admitted, the jury would still have had to decide if Zelenak acted out of a reasonable fear of Morehead.

Accordingly, I would reverse the conviction and remand for a new trial. I dissent.

---

to the point where she believed escape from him or disobedience would result in her death or the death of a family member. On one of her, after one of her interviews with her she reported and these are reports that were provided to Dr. Cropper. It appears that she was switching at the time Mrs. Crockett was killed and would reveal more about the entire event if she were an estate, if she were in the state that she was at the time. By switching, Ms. Polidoro would talk about the switching from one personality to the other. I would read from the Code of Virginia, Section 54.1-3700, which would say a clinical social worker means a social worker who, by education and experience, is professionally qualified at the autonomous practice level to provide direct diagnostic, preventive and treatment services where functioning is threatened or affected by social and psychological stress or health impairment. To, and, also, in this section in order to engage in the practice of social work it shall be necessary to hold the license, which Ms. Polidoro is, and I would respectfully submit this proffer.