COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Elder and Beales
Argued at Chesapeake, Virginia


LALITA YELDELL

                                              MEMORANDUM OPINION[*] BY
v.        Record No. 0699-05-2          CHIEF JUDGE WALTER S. FELTON, JR.
                                                   AUGUST 8, 2006
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                          Margaret P. Spencer, Judge

          Gary R. Hershner for appellant.

          Susan M. Harris, Assistant Attorney General (Robert F. McDonnell,
          Attorney General; Susan L. Parrish, Assistant Attorney General, on
          brief), for appellee.


        Lalita Yeldell ("appellant") appeals from her convictions following a jury trial, for felony

driving under the influence of alcohol in violation of Code § 18.2-266, two counts of involuntary

manslaughter in violation of Code § 18.2-36.1, and one count of maiming while driving under the

influence of alcohol in violation of Code § 18.2-51.4.  She contends the trial court erred in:  (1)

allowing the Commonwealth's accident reconstruction expert to give opinion testimony as to how

the motor vehicle collision occurred, and (2) prohibiting defense counsel from cross-examining the

Commonwealth's accident reconstruction expert about witness statements the expert testified he had

considered when forming his opinions.  For the reasons that follow, we reverse appellant's

convictions and remand for a new trial if the Commonwealth be so advised.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

The record reflects that shortly after 3:00 a.m. on April 11, 2004, appellant's Lexus automobile collided with a Mazda automobile in the northbound lanes of Interstate 95 in the City of Richmond. Chantelle Haynes, the driver of the Mazda, and Tashanna Smallwood, Haynes' front seat passenger, were pronounced dead at the scene. Adrian Wright-Bent, Haynes' backseat passenger, suffered a broken femur, broken pelvic bones, and fractures of most of her facial bones. Rescue workers extracted appellant from her vehicle, which had come to rest on the jersey wall dividing the northbound and southbound lanes of Interstate 95. She was transported to a hospital where she was in a coma for some three weeks following the accident.

Motion *in Limine*

Prior to trial, appellant filed a motion *in limine* to "prohibit the Commonwealth from presenting expert reconstruction evidence." Specifically, appellant sought to exclude the expert opinions of Virginia State Trooper Anthony Puckett. Puckett, trained and experienced in accident reconstruction, investigated the scene of the collision. He created a scaled diagram of the area based on measurements he made shortly after the collision, and prior to the vehicles being moved. He spent some thirty hours analyzing the evidence he obtained at the scene.

At the hearing on the motion *in limine*, Puckett testified as to his observations at the collision scene, and opined as to how each vehicle reached its final resting place. He explained that in reaching that conclusion, he considered the following: "[t]he damage to each vehicle, markings on the roadway, paint transfers of the vehicle, statements by the drivers and statements by witnesses, fluid transfers, debris in the roadway . . . [and t]he measurements of the vehicles."

At the conclusion of the hearing, appellant objected to the admission of Puckett's opinions regarding how the collision occurred. He argued that Puckett's opinions invaded the

province of the jury because they were within the common knowledge of a person of reasonable intelligence and relied, in part, on witness statements.

The trial court took appellant's motion under advisement, stating, "[t]he Court will not allow an expert to invade the province of the jury. The Court will not allow an expert to render an opinion that a lay witness can render." However, the trial court stated that the accident reconstruction "expert will be allowed to render an expert opinion based upon scientific analysis."

Trial

At the beginning of appellant's trial, the trial court reiterated that Puckett would not be permitted to invade the province of the jury in his testimony. The trial court, however, accepted Puckett as an expert in the field of accident reconstruction over appellant's objection.

The Commonwealth began its opening argument by playing a 911 tape for the jury. It argued, presumably from what was on the tape, that the evidence would prove that "[t]he car going the wrong way was driven by the defendant, Lalita Yeldell." Inexplicably the record does not contain the 911 tape, or any transcript of what the 911 tape contained.

During the Commonwealth's case-in-chief, Puckett testified that four vehicles were involved in the collision -- appellant's green Lexus, Haynes' blue Mazda, a red Buick, and a red Honda. He described the collision scene for the jury, referring to the diagram he had created. Based on his investigation, Puckett opined that appellant's Lexus "struck" the victims' Mazda "head-on," causing the Mazda to rotate counterclockwise into the center lane, where it was struck a second time by the red Buick. He testified that the red Honda, in turn, subsequently struck the Buick. Puckett concluded, from the location of the Mazda's bumper cover he found on the highway, that the Mazda was traveling northbound when it collided with the Lexus.

On cross-examination, appellant's counsel questioned Puckett regarding witness statements

in conflict with his conclusion regarding how the collision occurred. The following colloquy

occurred:

> [APPELLANT'S COUNSEL]: Now, I have been supplied with the
> statements from every one of the people to the accident.
>
>        \*       \*       \*       \*       \*       \*       \*
>
> [APPELLANT'S COUNSEL]: And I put them all in this nice
> notebook. Could you go through there and see if anyone testified
> they observed Ms. Yeldell's vehicle going the wrong way on 95?
>
>        \*       \*       \*       \*       \*       \*       \*
>
> [TROOPER PUCKETT]: I had not seen any statements that said
> that.
>
> [APPELLANT'S COUNSEL]: And, in fact, some of the statements
> indicate Ms. Yeldell's vehicle was traveling in the correct direction?
>
> [THE COMMONWEALTH]: Objection.
>
> THE COURT: Sustained; hearsay.
>
> [APPELLANT'S COUNSEL]: Judge, this witness has testified that
> he relied on part of witnesses' statements, and it is perfectly proper
> for me to ask him about those witnesses' statements.
>
> THE COURT: The objection is sustained. Let's move on.
>
> [APPELLANT'S COUNSEL]: At the appropriate time, I would like
> to proffer what those statements were.[1]
>
> THE COURT: The objection is sustained. Move on.

At the conclusion of the Commonwealth's case-in-chief, appellant moved to strike Puckett's

testimony on the basis that his opinions relied in part upon witnesses' statements and that she was

not allowed to cross-examine Puckett as to the reliability of those statements. After the trial court

---

[1] The notebook containing the purported witness statements was not made part of the record on appeal.

- 4 -

denied appellant's motion to strike, appellant asserted that Puckett's testimony should also be struck because it "invades the province of the jury." Following the presentation of all the evidence, appellant renewed her motion to strike the evidence "for the reasons previously stated." The trial court denied her motion.

The jury found appellant guilty of all four charges.

ANALYSIS

I.

The Commonwealth asserts, pursuant to Rule 5A:18, that appellant is barred on appeal from raising the issue that Puckett's testimony describing how the collision occurred invaded the province of the jury. Specifically, it argues that "defense counsel made no objection [at trial] that the expert's testimony was inadmissible because it invaded the province of the jury[, rather] . . . [t]he only objection to Trooper Puckett's testimony at trial was that it was not scientifically based." It contends that appellant's motion to strike Puckett's testimony as invading the province of the jury was made *after* the trial court had ruled on her motion to strike Puckett's testimony as not supported by scientific analysis, and did not save the issue for appeal because it "did not allow the trial court to consider the argument."

"Rule 5A:18 requires an 'objection [be] stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice.'" Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (quoting Rule 5A:18). "The primary function of Rule 5A:18 is to alert the trial judge to possible error so that the judge may consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials." Martin v. Commonwealth, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992). Thus, "[u]nder this rule, a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal." Edwards,

41 Va. App. at 760, 589 S.E.2d at 448 (citing Mounce v. Commonwealth, 4 Va. App. 433, 435, 357 S.E.2d 742, 744 (1987)).

The record reflects appellant presented the trial court with an opportunity to consider whether Puckett's opinion testimony invaded the province of the jury. Appellant's motion *in limine* clearly sought to exclude Puckett's testimony on the grounds that it invaded the province of the jury. After concluding *voir dire* of Puckett, appellant again objected to his opinion testimony, arguing that "the opinions [are] base[d] . . . in part on statements from witnesses and . . . the law of physics," and "based on the problem of the jury . . . [it] is not admissible for Virginia law." Moreover, appellant made a "continuing objection to the opinions" during Puckett's testimony. We therefore conclude appellant preserved the trial court's ruling on the "invasion of the jury's province" for appellate review.

## II.

Appellant contends the trial court erred in admitting Puckett's opinion testimony regarding how the fatal collision occurred. She argues his testimony invaded the province of the jury, that Puckett's ultimate conclusions were not scientifically based, and that Puckett's opinions partially relied on the credibility of witness statements.

"The admission of expert testimony is committed to the sound discretion of the trial judge, and we will reverse a trial court's decision only where that court has abused its discretion." Brown v. Corbin, 244 Va. 528, 531, 423 S.E.2d 176, 178 (1992). "Nonetheless, expert testimony is inadmissible on any subject on which the ordinary lay person of average intelligence is equally capable of reaching his or her own conclusion." Id. (citing Lopez v. Dobson, 240 Va. 421, 423, 397 S.E.2d 863, 865 (1990)). Applying this standard, the Supreme Court has repeatedly held in both civil and criminal cases that "accident reconstruction expert testimony is rarely admissible . . . because it invades the province of the jury." Id. (citing Venable v. Stockner, 200 Va. 900, 904-05,

108 S.E.2d 380, 383-84 (1959); Grasty v. Tanner, 206 Va. 723, 726-27, 146 S.E.2d 252, 254-55 (1966)). See also Thorpe v. Commonwealth, 223 Va. 609, 292 S.E.2d 323 (1982) (applying the Court's rationale in Grasty).

Binding precedent establishes that an accident reconstruction expert, in either a civil or criminal case, "may describe tire marks, skid marks, or cuts which he has observed on the pavement at or near the place of an automobile accident, [as well as damage to the vehicles,] but the inference to be drawn from such testimony is 'solely [within] the province of the jury.'" Venable, 200 Va. at 905, 108 S.E.2d at 383-84 (quoting Richardson v. Lovvorn, 199 Va. 688, 693, 101 S.E.2d 511, 514 (1958)). See also Lopez, 240 Va. at 423, 397 S.E.2d at 865; Schooler v. Commonwealth, 14 Va. App. 418, 421, 417 S.E.2d 110, 111 (1992). This principle is consistent with the well-established rule that "'the admission of expert opinion upon an ultimate issue of fact is impermissible [in criminal cases] because it invades the function of the fact finder.'" Zelenak v. Commonwealth, 25 Va. App. 295, 299, 487 S.E.2d 873, 875 (1997) (quoting Llamera v. Commonwealth, 243 Va. 262, 264, 414 S.E.2d 597, 598 (1992)).

The record before us establishes that Puckett told the jury that a 34-foot skid mark on the northbound lanes of Interstate 95 was consistent with being made by the Mazda in which the victims were traveling. He also stated that appellant's Lexus had made several gouge marks in the roadway when its driver's side tire had separated from the vehicle, completely exposing the rim. Puckett further explained that he had observed paint that matched Haynes' Mazda on the hood and front bumper of appellant's Lexus. He noted that no other paint transfer was found on any other portion of the Lexus. Paint matching appellant's Lexus was located on the front portion of Haynes' Mazda. We conclude the foregoing testimony did not invade the province of the jury.

However, Puckett also testified that the damage to the front of both the Lexus and the Mazda was angled towards the driver from the front passenger headlight, consistent with a head-on

collision. Then, using the diagram of the collision scene, Puckett pointed to where the Mazda's bumper cover landed and explained that its "distance away from the actual impact . . . indicate[d] . . . the direction . . . the . . . Mazda" was traveling at the time of impact. He opined that the location of the Mazda's bumper cover "suggest[ed] that the . . . Mazda was traveling northbound on the interstate." Puckett concluded that, based on his observations, and the statements of the other drivers and witnesses, appellant's "driver's side headlight" impacted with the Mazda's "driver's side headlight" in a "head-on, slightly off-set" collision. From these conclusions, Puckett determined that after the Lexus and the Mazda

> struck head-on . . . [t]he vehicles rotated which pushed the . . . Lexus up on the concrete barrier [between the north and southbound lanes of Interstate 95]. After the vehicles were rotating, the . . . Mazda, its driver's side rear rotated out in the center lane and was struck by the . . . Buick. Almost simultaneously when he struck the back of the vehicle, he was struck in the rear by the . . . Honda.

We previously have held that an "expert in the field of crash reconstruction," Schooler, 14 Va. App. at 419, 417 S.E.2d at 111, who related his observations from the scene of an accident, was not permitted to "state his resulting opinion that defendant's vehicle 'impacted the tree on the left front grill area on the left hand side of the vehicle' and then 'rotated to the right re-entering the roadway in front of the police vehicle.'" Id. at 419-20, 417 S.E.2d at 111. We concluded that these inferences drawn from the expert's observations and findings "belonged solely to the factfinder." Id. at 422, 417 S.E.2d at 112.

Puckett's testimony that the Lexus and the Mazda impacted in a head-on, slightly off-set collision and that Haynes' Mazda was traveling northbound in the northbound lanes at the time of the collision, as well as his testimony regarding the subsequent rotation of the vehicles as each came to a stop in its final resting location, mirrored the impermissible expert testimony in Schooler. Whether appellant's Lexus struck Haynes' Mazda "head-on" while traveling in the wrong direction

on the interstate highway, or whether the Mazda was traveling northbound at the time of the collision were crucial facts in determining whether appellant's conduct was so gross, wanton, and culpable as to show a reckless disregard for human life, as well as whether her conduct was a proximate cause of the victims' deaths and maiming.[2] Furthermore, Puckett's testimony on these critical matters in essence told the jury that appellant was driving southbound in the northbound lanes when the car she was driving and the Mazda collided. Such testimony violates Virginia's prohibition of expert opinion on ultimate issues of fact in criminal cases. See Askew v. Commonwealth, 40 Va. App. 104, 109, 587 S.E.2d 58, 61 (2003) (citing Zelenak, 25 Va. App. at 299, 487 S.E.2d at 875).

Moreover, throughout his testimony, Puckett stated that he did not use mathematical calculations or other scientific equations to arrive at his conclusions as to how the fatal collision occurred. Rather, he emphasized that he employed his knowledge of Newton's Laws of Physics[3] and considered the evidence he gathered at the accident scene, including roadway markings, paint transfers, vehicle damage, and statements of witnesses and other drivers. Puckett's opinion testimony "required no scientific or specialized knowledge, but w[as] susceptible to determination

---

[2] To convict appellant of aggravated involuntary manslaughter and maiming while driving under the influence of alcohol, the Commonwealth had to prove that appellant was driving under the influence of alcohol, that her conduct was so gross, wanton, and culpable as to show a reckless disregard for human life, and that a causal connection existed between her intoxication and the death of another person. Goodman v. Commonwealth, 37 Va. App. 374, 386-87, 558 S.E.2d 555, 561-62 (2002) (citations omitted). See also Stevens v. Commonwealth, 44 Va. App. 122, 133, 603 S.E.2d 642, 648 (2004) (noting that the charge of maiming while driving under the influence also requires proof of driving under the influence of alcohol or drugs and a causal connection, but requires proof of "serious bodily injury of another person resulting in permanent and significant physical impairment instead of death").

[3] Puckett testified during his expert qualification *voir dire* that the First Rule of Newton's Laws of Physics is that, "[a]n object at rest remains at rest unless acted upon by an outside force. An object in motion remains in motion in a straight line unless acted upon by an outside force." Puckett also stated Newton's Second Law of Physics as "[a]n outside force acting upon an object, forces an object in a direction based on the amount of force."

on the basis of [the] ordinary knowledge, common sense, and practical experience of lay persons." Schooler, 14 Va. App. at 421, 417 S.E.2d at 112 (internal citations omitted).

Likewise, the issue of the credibility of the drivers' and witnesses' statements on which Puckett partially based his opinions "falls squarely within the jury's province, and is one which a jury can resolve without any expert testimony to assist it." Brown, 244 Va. at 532, 423 S.E.2d at 178.

From the record before us we conclude that the trial court abused its discretion when it admitted Puckett's opinion testimony that there was a head-on collision between the Lexus and the Mazda in the northbound lanes of Interstate 95; that the Mazda was traveling northbound at the time of the collision; and that the Mazda, after being struck by the Lexus, was struck a second time by the Buick, which in turn was struck by the Honda. Puckett's opinions in these areas invaded the province of the jury because they offered conclusions on ultimate issues of fact, required no scientific or specialized knowledge, and were partially based on witness and driver statements, the credibility of which was to be assessed solely by the jury. See Brown, 244 Va. at 533, 423 S.E.2d at 180; Lopez, 240 Va. at 423-24, 397 S.E.2d at 865; Venable, 200 Va. at 905, 108 S.E.2d at 394; Schooler, 14 Va. App. at 420, 417 S.E.2d at 112.

### III.

Although the trial court erred in admitting Puckett's opinion testimony, "that error does not require reversal if we determine the error was harmless." Epps v. Commonwealth, 47 Va. App. 687, 708-09, 626 S.E.2d 912, 922 (2006) (en banc) (citing Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc)).

An error is harmless "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678.

> In a criminal case, it is implicit that, in order to determine whether there has been a fair trial on the merits and whether substantial justice has been reached, a reviewing court must decide whether the alleged error substantially influenced the jury. If it did not, the error is harmless.

Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001). In Clay, the court adopted the following test for non-constitutional harmless error:

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . . If so, or if one is left in grave doubt, the conviction cannot stand.

Id. at 260, 546 S.E.2d at 731-32 (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)).

Applying this standard, we cannot say on this record that Puckett's opinion testimony did not substantially influence the jury. "Notwithstanding [the physical evidence of the fatal collision], the jury could have been persuaded by the testimony of one witness, a witness qualified by the trial judge as an expert in the [field of accident reconstruction], to believe that" appellant, in her intoxicated state, was driving the wrong way on the northbound lanes of Interstate 95. Jenkins v. Commonwealth, 254 Va. 333, 338, 492 S.E.2d 131, 133-34 (1997). We reverse appellant's convictions and remand for a new trial.

Having concluded that the trial court committed reversible error in admitting Puckett's opinion testimony, it is unnecessary for us to consider appellant's second contention that the trial court erred in prohibiting her from cross-examining Puckett as to the reliability of conflicting witness statements on which he partially based his opinions.

Reversed and remanded.