### Richmond

CHARLES RHODES BOND

V.

COMMONWEALTH OF VIRGINIA

Record No. 822057.

January 20, 1984.

Present: All the Justices.

*Oldric J. LaBell, Jr.*, for appellant.
*Todd E. LePage, Assistant Attorney General (Gerald L. Baliles, Attorney General*, on brief) for appellee.

POFF, J., delivered the opinion of the Court.

Defendant appeals from a judgment confirming the verdict of a jury which convicted him of murder of the second degree and recommended a sentence of 20 years in the penitentiary.

Hattie Lee Banks died as a result of a fall from the outside balcony of the fourth-floor apartment where she lived with her

nine-year-old son and her boyfriend, defendant Charles Rhodes Bond. The son testified that defendant had struck his mother during a quarrel preceding the tragedy. A neighbor watching from a window in an adjacent apartment "saw this woman coming out the door over the balcony like a ragdoll". A young boy on the sidewalk below saw the body as it fell, looked up to the balcony, and observed a man fitting defendant's description entering the balcony door. A short time later, defendant was seen running from the apartment. According to the witness, defendant stopped, looked at the body, and fled. Another witness testified that Mrs. Banks had been depressed and had planned to leave defendant and return to North Carolina.

Defendant assigns error to the admission of a portion of an autopsy report prepared by Dr. Faruk Presswalla, Deputy Chief Medical Examiner in the jurisdiction, and to the admission of his oral testimony. The "case summary and comment" at the foot of the report stated in part:

> This 27 year-old female was seen by a witness to come off with some force from the fourth floor apartment and then fall down close to the building line. . . . Police investigation revealed that there had been a quarrel between the decedent and her boyfriend prior to this occurrence. Based on the circumstantial investigation and the scene investigation and the site of the fall, the possibility of a suicidal jump is ruled out. An accidental fall while leaning over the balcony is ruled out in view of the witness's having noticed the decedent come "flying out" of the room onto the patio and then off into the street. Death is therefore classified as homicidal. Postmortem blood alcohol was negative. Screen for drugs was negative.

Defendant objected to the admission of this language on the ground it was an expression of opinion based upon hearsay. The trial court ruled that the full report was admissible as "an exception to the hearsay rule" because Code § 19.2-188* (for-

---

* § 19.2-188. Reports and records received as evidence. — Reports of investigations made by the Chief Medical Examiner or his assistants or by medical examiners, and the records and reports of autopsies made under the authority of Title 32.1 of this Code, shall be received as evidence in any court or other proceeding, and copies of records, photographs, laboratory findings and records in the office of the Chief Medical Examiner or any medical examiner, when duly attested by the Chief Medical Examiner or one of his Assistant Chief Medical Examiners, or the medical examiner in whose office the same are, shall

merly, § 19.1-45) "clearly says it shall be admissible in evidence. And it would be incumbent upon you [defense counsel] to make such cross examination as you wish to make."

The trial court erred in that ruling. In *Ward* v. *Commonwealth*, 216 Va. 177, 217 S.E.2d 810 (1975), upon which defendant expressly relied when he raised the objection below, we held that a statement recorded in a medical examiner's postmortem report concerning the "probable cause of death" was "an expression of opinion" and, since only statements of fact are within the purview of the statutory exception, the opinion "was incompetent to show the cause of . . . death." *Id.* at 177-78, 217 S.E.2d at 811.

The Commonwealth called Dr. Presswalla as an expert witness and asked him how he would "classify the manner of death" as distinguished from the "medical cause of death". Over defendant's objection, the expert testified, "I made a determination that Miss Banks' death was as a result of a homicide." He based his conclusion on witnesses' "statements in writing", "information conveyed orally" by investigating officers, "a diagram of the apartment", and the absence of clinical evidence that the decedent had ingested alcohol or narcotics. Such circumstances, he felt, "ruled out an accident and ruled out the suicide. In my opinion. And for the homicide, yes, the fact that there had been a quarrel was used, the way the body, the person came out." Asked if Banks could have tripped over the threshold of the balcony door and fallen accidentally, Dr. Presswalla replied, "No, it is my opinion that she did trip and fall over, but that the force which brought her to trip was a push, based on the other evidence." This testimony is the subject of a separate assignment of error.

■ In a murder prosecution, "there are two fundamental and essential facts to be established: first, that the party alleged to have been murdered is dead; and, second, that the death was brought about by the criminal agency of another." *Nicholas' Case*, 91 Va. 741, 750, 21 S.E. 364, 366 (1895). Thus, death by criminal agency is an ultimate fact in issue.

■ As a general rule, opinion testimony of lay witnesses is incompetent. Moreover, when the evidence, exclusive of expert testimony, is sufficient to enable a jury of laymen to reach an in-

be received as evidence in any court or other proceeding for any purpose for which the original could be received without proof of the official character or the person whose name is signed thereto.

telligent conclusion, an opinion offered by an expert is inadmissible.

> Where the facts and circumstances shown in evidence are such that men of ordinary intelligence are capable of comprehending them, forming an intelligent opinion about them, and drawing their own conclusions therefrom, the opinion of an expert based upon such facts and circumstances is inadmissible.

*Coppola* v. *Commonwealth*, 220 Va. 243, 252, 257 S.E.2d 797, 803-04 (1979) (citations omitted).
■ And we have consistently held that the admission of expert opinion upon an ultimate issue of fact is an impermissible invasion of the function of the factfinder.

> [W]hile an expert witness may be permitted to express his opinion relative to the existence or nonexistence of facts not within common knowledge, he cannot give his opinion upon the precise or ultimate fact in issue, which must be left to the jury or the court trying the case without a jury for determination.

*Webb* v. *Commonwealth*, 204 Va. 24, 33, 129 S.E.2d 22, 29 (1963) (citations omitted).
■ On brief, the Attorney General says that "[a]t least thirty-seven (37) states have abandoned the rule that an expert witness may not testify as to the ultimate facts in issue" and urges us to overrule Virginia precedent and join the "unmistakable trend of authority". We are not prepared to do so in a criminal case such as this where life or liberty often turns upon inferences raised by circumstantial evidence. The process of resolving conflicting inferences, affected as it is by the credibility of the witnesses who supply such evidence, is the historical function of a jury drawn from a cross-section of the community. We are unwilling in this case to entrust that function to experts in the witness box. True, under the rule the Attorney General urges, jurors would still be free to disregard an expert's opinion and to resolve conflicts when experts disagree. But an opinion of a witness the judge has found to be an expert carries great weight with laymen, and the services of an expert witness are expensive. Drawing upon

the public fisc, the prosecution can afford to finance a duel of experts; an indigent defendant cannot.

Here, the crucial issue was whether death was brought about by criminal agency. The ultimate question was whether the decedent jumped intentionally, fell accidentally, or was thrown to her death. The facts and circumstances shown by the testimony of lay witnesses were sufficient to enable a jury to decide that question. The expert's opinion was based largely, if not entirely, upon the same facts and circumstances. Reaffirming unbroken precedent, we hold that Dr. Presswalla's opinion testimony was inadmissible.

The Attorney General further suggests that any error committed below was harmless. We cannot accept that view. In *Ramsey v. Commonwealth*, 200 Va. 245, 105 S.E.2d 155 (1958), we reversed an arson conviction because the trial court had admitted the opinion of an expert that the fire was of incendiary origin. We did so even though other competent evidence tended to support such a finding. More recently, we reviewed a rape case in which a doctor had been permitted to state his opinion, based upon a clinical examination and the hearsay accounts of his patients, that the young women had been raped. Reversing the convictions, we expressly rejected a harmless-error argument:

> Neither can we agree with the Attorney General that, excluding the disputed testimony, the other evidence against the defendant is so overwhelming that any error in the admission of the testimony is rendered harmless. While the other evidence amply supports the jury's verdicts, the disputed testimony may well have affected the jury's decision. Accordingly, we conclude that the error in admitting the testimony was prejudicial to the defendant.

*Cartera v. Commonwealth*, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978); *cf. Rife v. Blankenship*, 721 F.2d 983 (4th Cir. 1983).

We adhere to the view that error in the admission of expert opinion may be harmless when other evidence of guilt is overwhelming. Here, we believe the expert's opinion, recorded in a solemn document and reaffirmed and reinforced in his oral testimony, may have been the decisive, if not the exclusive, factor in the jury's finding that death was the result of criminal conduct.

Accordingly, we will reverse the judgment and remand the case for a new trial.

*Reversed and remanded.*