COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Petty and Chafin
Argued at Richmond, Virginia


MICHAEL HUDSON, S/K/A
 MICHAEL DERIK HUDSON
                                                    MEMORANDUM OPINION* BY
v.        Record No. 0569-18-2                       JUDGE WILLIAM G. PETTY
                                                         APRIL 2, 2019
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF KING WILLIAM COUNTY
B. Elliott Bondurant, Judge

Charles E. Haden for appellant.

Donald E. Jeffrey, III, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Michal Hudson was convicted by a jury of strangulation in violation of Code § 18.2-51.6,

aggravated malicious wounding in violation of Code § 18.2-51.2, and abduction in violation of

Code § 18.2-47.  The only issue before this Court on appeal is whether the trial court erred in

allowing the medical examiner's "report and testimony to include pathological diagnosis of

'Status Post Assault/Manual Strangulation' as a violation of the Rules of Evidence permitting an

expert to comment on the ultimate issue in the case of the medical examiner because it gave

opinion on the ultimate issue."[1]  For the reasons stated below, we affirm the convictions.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] This Court did not grant the other assignments of error in the petition for appeal.

BACKGROUND

Because the parties are fully conversant with the record in this case and this memorandum opinion carries no precedential value, we recite only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal. We view the facts in the light most favorable to the prevailing party below, granting to it the benefit of any reasonable inferences; we review issues of law *de novo*. Hall v. Commonwealth, 55 Va. App. 451, 453 (2009).

As part of its case in chief, the Commonwealth called the medical examiner to testify regarding the injuries sustained by the victim. The medical examiner's partially-redacted autopsy report was also admitted into evidence.[2] Hudson objected to a pathological diagnosis in the report of "Status Post Assault/Manual Strangulation" and a summary that referenced an assault on December 18, 2015, in which the victim "was manually strangled."[3] Hudson argued that the medical examiner's use of the phrase "Post Assault/Manual Strangulation" indicated a criminal act and thereby encompassed an ultimate issue in the case; it should therefore have been redacted. The Commonwealth argued that the ultimate issue was whether Hudson had committed the strangulation. After listening to extensive arguments by counsel, the trial court overruled Hudson's objection. The court found that the term strangulation was used as "more of a medical term" rather than "a legal finding." The court analogized the issue to a possession of a controlled substance case in which a lab technician may testify that the substance is a controlled substance, which is an element of the crime.

---

[2] The victim died of unrelated causes, and references to the causes of death were redacted by the Commonwealth.

[3] The victim stated she had been choked on Saturday, which was December 19, 2015. The discrepancy in dates was not explored at trial by the parties and does not affect this Court's analysis on appeal.

After the expert testimony of a neurologist but prior to the medical examiner's testimony, the court *sua sponte* revisited the question of whether the references by the medical examiner to post-assault strangulation should be allowed. After hearing a proffer of the medical examiner's testimony, the trial court allowed the testimony. The trial court noted that medical findings that a repercussion injury occurred in the brain and that the "lack of blood flow to the one area of the brain would be consistent with loss of blood flow due to compression of the neck" laid a sufficient foundation for the medical examiner to give her opinion that the victim had been strangled.[4] The court concluded that the ultimate issue was whether Hudson strangled the victim, which was not referenced in the medical examiner's testimony or report.

Hudson appeals that ruling.

ANALYSIS

"The admission of expert testimony is committed to the sound discretion of the trial judge . . . ." Commonwealth v. Allen, 269 Va. 262, 274 (2005) (quoting Brown v. Corbin, 244 Va. 528, 531 (1992)). A trial court's decision will be reversed on appeal only if the trial court abused its discretion under the particular circumstances of the case. Kilby v. Commonwealth, 52 Va. App. 397, 410 (2008).

> It is well established in Virginia that an expert witness may provide testimony, including opinions, if the fact finder "is confronted with issues" that "cannot be determined intelligently merely from the deductions made and inferences drawn on the basis of ordinary knowledge, common sense, and practical experience gained in the ordinary affairs of life" and thus require "scientific or specialized knowledge."

---

[4] The medical examiner testified that when a portion of the brain is deprived of oxygen for a portion of time, and then blood flow is returned, two distinct injuries can be seen. The first is the damage associated with the stroke from the deprivation of oxygen. The second is the repercussion injury when the compression on the neck is released and the blood rushes back into the area. The medical examiner testified that the victim's brain showed both types of injury.

Midgette v. Commonwealth, 69 Va. App. 362, 375 (2018) (quoting Schooler v. Commonealth, 14 Va. App. 418, 420 (1992)).

> However, an expert witness "cannot give his opinion upon the precise or ultimate fact in issue, which must be left to the jury or the court trying the case without a jury for determination." An expert must not provide such an opinion, because testifying as to the ultimate fact in issue "invades the function of the fact finder."

Id. at 376 (quoting Llamera v. Commonwealth, 243 Va. 262, 264-65 (1992)). This rule is now codified in Virginia's Rules of Evidence, which states, "In criminal proceedings, opinion testimony on the ultimate issues of fact is not admissible." Va. R. Evid. 2:704(b).

It is sometimes difficult to discern the line between expert testimony that aids the factfinder and expert testimony that invades the function of the factfinder. "Experts are frequently permitted to express opinions in criminal cases about matters which closely approach the ultimate issue in the case." Kent Sinclair, Law of Evidence in Virginia § 13-10(c) (8th ed. 2018). The Supreme Court has enumerated several cases in which it considered the ultimate issue question.

> In Ramsey [v. Commonwealth, 200 Va. 245 (1958)], an arson case, we held that the trial court erred in allowing an expert witness to conclude, based upon facts stated in a hypothetical question, that the fire was of incendiary origin. This was an opinion on an ultimate issue to be decided by the jury. 200 Va. at 251.

> In Webb [v. Commonwealth, 204 Va. 24 (1963)], the accused was charged with embezzlement. We concluded that the trial court erred in permitting an expert witness to testify that the "effect" of two deposit slips prepared by the accused, which contained unrecorded receipts, was to replace funds converted by the accused to her own use. 204 Va. at 32-33. This, we said, was an opinion upon "the very issue in this case." Id. at 33.

> The accused in Cartera [v. Commonwealth, 219 Va. 516 (1978),] was charged with two counts of rape. A physician, who had examined and treated the victims, was permitted to express his opinion that the victims had been raped. 219 Va. at 518. We held

that this was reversible error because "[w]hether rape had occurred was the precise and ultimate issue in the case." Id. at 519.

> In Bond [v. Commonwealth, 226 Va. 534 (1984)], the accused was charged with murder. The alleged victim died as a result of a fall from a fourth-floor balcony. 226 Va. at 535-36. A medical examiner's autopsy report ruled out a suicide and an accident and classified the death as a homicide. Id. at 536. We held that the medical examiner's opinion was inadmissible because "[t]he ultimate question was whether the decedent jumped intentionally, fell accidentally, or was thrown to her death." Id. at 539.

Llamera, 243 Va. at 265 (holding in prosecution for possession of cocaine with intent to distribute that the Commonwealth was required to prove both the element of possession and the intent to distribute, which were both ultimate issues of fact); see also Velazquez v. Commonwealth, 263 Va. 95, 106 (2002) (holding expert's testimony that the injuries were consistent with non-consensual intercourse invaded factfinder's role because "whether rape had occurred was the precise and ultimate issue in the case"); Justiss v. Commonwealth, 61 Va. App. 261, 278 (2012) (holding that expert's testimony that BB gun was "likely to cause death or great bodily injury" was impermissible opinion on ultimate issue of whether BB gun was a deadly weapon); Zelenak v. Commonwealth, 25 Va. App. 295, 300 (1997) (concluding defense expert's testimony that defendant was under stress was ultimate issue where defendant argued the defense of duress). But see Hussen v. Commonwealth, 257 Va. 93, 99 (1999) (holding expert's opinion that victim's injuries were not consistent with consensual sex was not a comment on the ultimate issue, which was "whether the defendant's conduct was against the victim's will"); Midgette, 69 Va. App. at 376 (holding expert's testimony that a video was not an accurate representation of a traffic stop was not the ultimate issue in charge that "appellant testified falsely when he stated that the video . . . was an accurate depiction of the traffic stop"); Bowman v. Commonwealth, 30 Va. App. 298, 303 (1999) (holding identity of perpetrator was not an ultimate issue of fact).

Here, Hudson was indicted for strangulation of the victim in violation of Code § 18.2-51.6, which provides that "[a]ny person who, without consent, impedes the blood circulation or respiration of another person by knowingly, intentionally, and unlawfully applying pressure to the neck of such person resulting in the wounding or bodily injury of such person is guilty of strangulation."[5] Thus, the ultimate issues for determination by the factfinder were whether (1) Hudson committed an act (2) that fit the legal definition of strangulation. The trial court concluded that the testimony given by the medical examiner was medical in nature and did not constitute the ultimate issue in the case. The trial court's reasoning has merit, but we do not need to decide today whether the court erred in declining to redact references to an "assault." We conclude that any error in permitting those references was harmless.[6]

A harmless error analysis is required by Code § 8.01-678.

> When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any . . . defect, imperfection, or omission in the record, or for any other error committed on the trial.

Gregory v. Commonwealth, 64 Va. App. 87, 96 (2014) (alterations in original) (quoting Code § 8.01-678) (assuming without deciding expert's statement touched the ultimate issue but finding any error harmless). "If, when all is said and done, [it is clear] that the error did not influence the jury, or had but slight effect, . . . the judgment should stand . . . ." Clay v. Commonwealth, 262 Va. 253, 260 (2001) (alterations in original) (quoting Kotteakos v. United States, 328 U.S. 750, 764 (1946)).

---

[5] Whether a strangulation occurred is clearly not the precise ultimate issue for either of the other two crimes for which Hudson was convicted, abduction and aggravated malicious wounding. We therefore focus our analysis on Hudson's conviction for strangulation.

[6] "Judicial restraint commands that courts decide cases 'on the best and narrowest ground available.'" Campbell v. Commonwealth, 69 Va. App. 217, 237 (2018) (quoting Commonwealth v. Swann, 290 Va. 194, 196 (2015)).

- 6 -

Here, any error in declining to redact the autopsy report or limit the medical examiner's testimony had but slight effect, if any, on the jury. First, the jury was aware of the context of the pathological diagnosis and was able to determine the proper weight to give it. The jury heard the medical examiner testify that she based her opinion that strangulation caused the victim's stroke on information from other sources in the investigation rather than by personally observing signs of strangulation.[7] The jury also heard that the original final autopsy report did not include a diagnosis of post-assault/manual strangulation, but rather blunt force trauma, and that the medical examiner changed the diagnosis after consultation with a second neurologist.

Second, two experts testified that the stroke symptoms were consistent with strangulation. The medical examiner opined that, based on both medical and investigatory evidence, the victim "had a stroke due to strangulation." Additionally, the treating neurologist, testifying as an expert, testified "there have been reported cases where a strangling event resulted in specifically this type of stroke, comma-shaped stroke affecting these particular arteries."

Third, witnesses testified that the victim said she had been choked. A nurse testified that when Hudson left the hospital room, the victim said she had been choked. The victim repeated the statement to a treating doctor and indicated she wanted the police called. In response to the victim's statement, a hospital security officer told Hudson he had to leave the premises. The victim later repeated to her treating neurologist that she had been choked.

Finally, Hudson's actions supported the jury's conclusion that he was guilty. A repairman testified that he saw Hudson standing over the victim, who was lying unresponsive on the ground, on the morning of Saturday, December 19, 2015. The repairman helped Hudson place the victim in the car, at which time she was groaning but unable to speak. However,

_____

[7] Hudson did not object to the medical examiner's consideration of hearsay in her testimony or report.

Hudson did not take the victim to the hospital until Sunday, December 20. The jury could infer that Hudson's delay in seeking medical treatment for the victim was because he caused her injuries.

We conclude that the trial court's decision to allow references to an assault involving manual strangulation was such that it "did not influence the jury, or had but slight effect." Clay, 262 Va. at 260. "In sum, the accused has had a fair trial according to law, and the proof is conclusive of his guilt; any error in admitting the expert's testimony was utterly harmless." Rodriguez v. Commonwealth, 249 Va. 203, 208 (1995) (citing Code § 8.01-678).

CONCLUSION

For the foregoing reason, we affirm Hudson's convictions.

Affirmed.