PRESENT: Lemons, C.J., Goodwyn, Mims, Kelsey, McCullough, and Chafin, JJ., and Millette, S.J.

CRYSTAL LUCAS, ADMINISTRATOR
OF THE ESTATE OF MARK LUCAS

OPINION BY
v. Record No. 200336                                    SENIOR JUSTICE LEROY F. MILLETTE, JR.
JULY 1, 2021

RIVERHILL POULTRY, INC., ET AL.


FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
David B. Carson, Judge

This appeal arises from a defense verdict in a jury trial for an alleged wrongful death

occurring in an unexplained single-vehicle accident in which both occupants perished. The

plaintiff Crystal Lucas is the Administrator of the Estate of Mark Lucas (the "Administrator") and

the defendants are Riverhill Poultry, Incorporated ("Riverhill") and Amy B. Goode ("Goode"), the

Administrator of the Estate of Gerald Hilliard. The plaintiff contended that Hilliard fell asleep at

the wheel of his tractor-trailer thereby causing the accident that killed a passenger in the vehicle,

Mark Lucas. The defendants asserted that Lucas was the driver. We consider whether the circuit

court erred (i) in excluding portions of the medical examiner's autopsy report and the plaintiff's

experts' opinions regarding the identity of the driver and Hilliard's alleged sleep disorder and (ii)

in refusing the plaintiff's proffered jury instruction on falling asleep at the wheel. For the reasons

explained below, we will affirm the circuit court's judgment.

BACKGROUND

Just before 7 a.m. on February 15, 2017, a farm-use tractor-trailer owned by Riverhill left

its lane of travel on Interstate 81 southbound in Rockbridge County and rolled down an

embankment, killing Lucas and Hilliard. Riverhill employed Hilliard as a truck driver to transport

chicken waste fertilizer. Lucas, a friend and neighbor of Hilliard, accompanied Hilliard in the tractor-trailer on the day in question.

The Administrator filed a complaint against Riverhill and Goode (collectively "Defendants"), seeking damages for wrongful death. The Administrator alleged that Lucas was a passenger in the tractor-trailer and that Hilliard failed to exercise reasonable care in its operation; failed to keep it under proper control; and fell asleep, due to lack of proper rest, while operating the vehicle causing it to leave the roadway and roll over. She alleged that Hilliard's negligence was a proximate cause of Lucas's death and the beneficiaries' losses, including medical, funeral, and burial expenses; Lucas's reasonably expected income, services, protection, care, and assistance; and Lucas's "society, companionship, comfort, guidance, kindly offices and advice." Riverhill disputed that Hilliard was driving the tractor-trailer and contended instead that Lucas was driving. Alternatively, Riverhill asserted that if Hilliard was driving the tractor-trailer, he was not negligent.

Prior to trial, the circuit court granted defense motions to exclude the Administrator's proffered expert testimony from the attending medical examiner, Hilliard's family physician, a neurologist, and a trucking safety professional as well as portions of the medical examiner's autopsy report on Hilliard. At the beginning of trial, the Administrator proffered the excluded testimony from her experts as well as the medical examiner's materials. She made no other motions or arguments related to the excluded evidence during the trial. At the close of the evidence, the Administrator proffered the following jury instruction: "A person who falls asleep while driving is negligent." In support of her proffer, the Administrator argued that "we think that the evidence could have put the inference forward that the driver fell asleep because there was no

2

evasive action until it was too late."[1]  The circuit court refused the instruction.  The jury returned a

verdict for the defendants.

We awarded the Administrator this appeal.  She assigns the following errors to the circuit

court's judgment, which we will address in turn.

> 1. The trial court erroneously excluded laboratory and manner of death evidence from
> the Commonwealth's Assistant Chief Medical examiner's report, as well as
> supportive expert testimony from the Assistant Chief Medical Examiner.
>
> 2. The trial court erroneously excluded all testimony of truck driver Hilliard's family
> medicine physician about his sleep disorder, and later also refused the 'falling asleep
> at the wheel' Virginia model jury instruction.
>
> 3. The trial court erroneously excluded all expert neurological testimony on sleep
> disorders and fatigue (Dr. Hansen) and all expert truck safety testimony (Mr.
> Crawford) involving scientific findings and discussion of truck driver-fatigue and
> distracted driving.

DISCUSSION

ASSIGNMENT OF ERROR 1

Medical Examiner's Report and Expert Testimony

Dr. Sara Ohanessian, the Assistant Chief Medical Examiner at the Roanoke Office of the

Chief Medical Examiner, performed an autopsy on Hilliard.  She concluded the cause of Hilliard's

death was "Blunt Force Trauma of Head" and the manner of death was "Accident."  Her autopsy

report included the following "Summary of Circumstances:"

> This 68-year-old decedent was driving a 2004 Kenworth tractor trailer on I-81 in
> Virginia with a passenger.  The vehicle reportedly ran off the road, struck a
> guardrail, struck an embankment, and then overturned.  A call to 911 was made for
> assistance and police/rescue responded to the scene where the driver and passenger
> . . . were pronounced dead.  It was reported that both decedents were unrestrained.
> The medical examiner's office was notified, and the decedents were transported to
> WOCME for examination."

A forensic analysis of Hilliard's postmortem blood revealed that certain medications were present.

---

[1] Two eyewitnesses testified that when the tractor-trailer failed to negotiate the slight curve
in the roadway, the driver did not brake or take any other apparent action to avoid the accident.
The eyewitnesses could not identify the driver.

3

In her pre-trial deposition, Dr. Ohanessian testified that some of the medications found in Hilliard's blood were drowsiness-inducing medications typically taken as sleep aids. She also testified that, in addition to her physical examination of Hilliard's body, she relied on the final report from the state police to conclude that Hilliard was driving the tractor-trailer at the time of the crash. She added that the photographs of the accident scene showing Hilliard situated between the driver and passenger seats in the cab of the tractor-trailer with his left hand on the steering wheel also informed her conclusion that Hilliard was the driver. Dr. Ohanessian acknowledged on cross-examination that she had relied on the police report to "tell [her] who . . . was driving in this case" and that she was neither trained nor expected to recreate automobile accidents or make final conclusions about what object or mechanism may have caused the blunt force trauma to Hilliard's head. She agreed she could only speculate about what occurred. Dr. Ohanessian also acknowledged that she could only speculate about whether Hilliard suffered any adverse reactions to any of the medications found in his blood or whether he was awake or asleep at the time the vehicle left the roadway. She confirmed that once she determined the cause and manner of death, her duties were complete.

I.   Statutory Construction of Code § 8.01-390.2

First, the Administrator contends that the circuit court erred as a matter of law in excluding the Summary of Circumstances and the toxicology report because it was contrary to Code § 8.01-390.2. That statute provides:

> Reports of investigations made by the Chief Medical Examiner, his assistants or medical examiners, and the records and certified reports of autopsies made under the authority of Title 32.1, shall be received as evidence in any court or other proceeding, and copies of photographs, laboratory findings and reports in the office of the Chief Medical Examiner or any medical examiner, when duly attested by the Chief Medical Examiner or an Assistant Chief Medical Examiner, shall be received as evidence in any court or other proceeding for any purpose for which the original

4

could be received without proof of the official character or the person whose name is signed thereto.

The Administrator argues that the statute plainly provides that a medical examiner's reports of investigations and copies of laboratory findings "shall be received as evidence." She submits that the lack of any limiting language in the statute relating to hearsay testimony reflects that the General Assembly understood that a medical examiner's report by its very nature derives from hearsay, such as reports from first responders and third-party forensic laboratories. Therefore, although Dr. Ohanessian based the opinions in her Summary of Circumstances on the police report, accident photographs and the location of Hilliard's body in the cab of the tractor-trailer, rather than her personal knowledge of these facts, the Administrator argues that it did not warrant the circuit court's exclusion. Similarly, she contends that the laboratory findings were plainly admissible under the statute. The Administrator also argues that the laboratory results were relevant because, along with Dr. Ohanessian's supporting testimony, they demonstrated that Hilliard had knowingly ingested drowsiness-inducing medications, which was relevant to her theory that Hilliard fell asleep at the wheel.

Alleged errors involving statutory interpretation or application present questions of law that we review de novo on appeal. *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007). We are bound by "the plain language of a statute unless the terms are ambiguous or applying the plain language would lead to an absurd result." *Boynton v. Kilgore*, 271 Va. 220, 227 (2006) (internal citations and quotation marks omitted).

Although this is the first occasion on which we consider Code § 8.01-390.2, we have on several occasions construed and applied Code § 19.2-188, which is the materially identical

5

criminal counterpart of Code § 8.01-390.2.[2]  A review of those cases reveals that we have

consistently rejected the statutory construction and application that the Administrator promotes

here.  Her attempts to distinguish these cases do not persuade us to depart from this precedent for

purposes of our interpretation and application of Code § 8.01-390.2.

In *Bond v. Commonwealth*, 226 Va. 534 (1984), the decedent died after falling from a

fourth-floor balcony.  The medical examiner based his conclusions that the decedent was thrown to

her death, thereby making the death homicidal, upon the police investigation and report, witness

statements, photographs from the scene, and a postmortem blood analysis devoid of any

substances.  The circuit court overruled the defendant's objection to the admission of that portion

of the medical examiner's autopsy report as opinion based on hearsay, reasoning that the statute

provided an exception to the hearsay rule and because it "clearly says [the report] shall be

admissible in evidence."  *Id.* at 536-37.  On appeal, we held that the circuit court erred, holding

that "since only statements of fact are within the purview of the statutory exception" the medical

---

[2] In 2003, the General Assembly made slight, non-substantive amendments to Code
§ 19.2-188 and simultaneously enacted the identical Code § 8.01-390.2 as recited above.
S*ee* Acts 2003, ch. 459.  At all relevant times prior to 2003, Code § 19.2-18 provided:

> Reports of investigations made by the Chief Medical Examiner or his assistants or by
> medical examiners, and the records and reports of autopsies made under the authority
> of Title 32.1 of this Code, shall be received as evidence in any court or other
> proceeding, and copies of records, photographs, laboratory findings and records in the
> office of the Chief Medical Examiner or any medical examiner, when duly attested by
> the Chief Medical Examiner or one of his Assistant Chief Medical Examiners, or the
> medical examiner in whose office the same are, shall be received as evidence in any
> court or other proceeding for any purpose for which the original could be received
> without proof of the official character or the person whose name is signed thereto.

examiner's expression of opinion that the decedent died as a result of homicide was incompetent.

*Id.* at 537 (quoting *Ward v. Commonwealth*, 216 Va. 177, 178 (1975)).[3] We reasoned that

> [w]here the facts and circumstances shown in evidence are such that [jurors] of ordinary intelligence are capable of comprehending them, forming an intelligent opinion about them, and drawing their own conclusions therefrom, the opinion of an expert based upon such facts and circumstances is inadmissible.

*Id.* (quoting *Coppola v. Commonwealth*, 220 Va. 243, 252 (1979)). We further explained that although an expert witness may be permitted to express an opinion relative to the existence or nonexistence of facts not within common knowledge, the expert cannot give an opinion upon the precise or ultimate fact in issue, which must be left to the factfinder. *Id.* (citing *Webb v. Commonwealth,* 204 Va. 24, 33 (1963)).

Does Amendment to Code § 19.2-188 Limit Application of *Bond*?

The Administrator attempts to distinguish *Bond* and limit its application here, arguing that the medical examiner's opinion was impermissible there only because it bore on an ultimate fact in issue, which she contends is now permissible under the amendment to Code § 19.2-188. It provides:

> B. Any statement of fact or of opinion in such reports and records concerning the physical or medical cause of death and not alleging any conduct by the accused shall be admissible as competent evidence of the cause of death in any preliminary hearing.

*See* Acts 2009, ch. 640. We disagree with the Administrator's contention that the amendment would dictate a different result in *Bond* and therefore limits its relevance here to support the exclusion of Dr. Ohanessian's Summary of Circumstances. Nothing in the plain language of Code § 19.2-188 provides that a medical examiner is authorized to opine on an ultimate fact in issue, nor

---

[3] Code § 19.1-45, the predecessor to Code § 19.2-188, was in effect when we decided *Ward v. Commonwealth,* 216 Va. 177 (1975) and *Bass v. Commonwealth*, 212 Va. 699 (1972), but it also contained language materially identical to Code §§ 19.2-188 and 8.01-390.2. *See, e.g., Robertson v. Commonwealth*, 211 Va. 62, 65 (1970).

7

does it permit her to base an opinion on facts and circumstances shown by the testimony of lay witnesses that are sufficient to enable a jury to draw its own conclusion. Further, the medical examiner in *Bond* opined on conduct by the accused (that he threw the victim off the balcony), which the amendment plainly prohibits.

Does Enactment of Code § 8.01-401.3 Limit Application of *Bond?*

We also disagree with the Administrator's assertion that *Bond* has limited relevance to this civil case in light of Code § 8.01-401.3, which provides:

> No expert or lay witness while testifying in a civil proceeding shall be prohibited from expressing an otherwise admissible opinion or conclusion as to any matter of fact solely because that fact is the ultimate issue or critical to the resolution of the case. However, in no event shall such witness be permitted to express any opinion which constitutes a conclusion of law.

The circuit court excluded Dr. Ohanessian's testimony that Hilliard was driving and had ingested sleep aids at some time prior to the accident for lack of a proper foundation. The court concluded that the proffered testimony would invade the province of the jury to draw its own conclusions from the same evidence the doctor considered. Therefore, Dr. Ohanessian's expert testimony was not "otherwise admissible" as required by Code § 8.01-401.3. Hence, application of this statute also would not permit the medical examiner's excluded expert testimony. *See Countryside Corp. v. Taylor,* 263 Va. 549, 553 (2002) (internal citations omitted) (explaining that although Code § 8.01-401.3 has liberalized the admission of expert testimony, it nevertheless must meet the fundamental evidentiary requirements, such as an adequate foundation). Accordingly, our construction and application of Code § 19.2-188 in *Bond* applies here without limitation.

Additional Cases that Inform our Construction of Code § 8.01-390.2

We likewise adopt and apply our reasoning in *Bass v. Commonwealth,* 212 Va. 699, 700 (1972). There, we rejected the Commonwealth's argument, similar to the Administrator's

8

arguments here, that admission of the medical examiner's report was mandatory because of the statutory language providing that a medical examiner's report "shall be received into evidence." We explained that the effect of the statute was to make reports of investigations of the medical examiner "admissible as prima facie evidence of the facts stated therein, thus obviating the necessity of summoning as witnesses those persons" performing the particular tests or investigations at issue. *See also, Robertson v. Commonwealth*, 211 Va. 62, 67-68 (1970) (construing the statute to mean that facts, not opinions, in a medical examiner's report are accorded the dignity of prima facie evidence).

Similarly, in *Hopkins v. Commonwealth,* 230 Va. 280, 286-287 (1985), the circuit court ruled, over defense objection, that Code § 19.2-188 permitted the admission of the victim's dental identification through the medical examiner's testimony or the autopsy report. On appeal, we held that the circuit court erred, explaining that "expressions of opinion . . . are not admissible merely because they are included in a medical examiner's report; only statements of fact are admissible under this statutory exception to the rule excluding hearsay evidence." *See also Quintana v. Commonwealth,* 224 Va. 127, 141 (1982) (holding the medical examiner's report was prima facie evidence of the stated facts but that an opinion in the report was not competent evidence). Accordingly, we reject the Administrator's similar arguments on these points as well.

Our reasoning in the foregoing cases is also consistent with our holdings that it is error to admit into evidence a death certificate, which is governed by Code § 32.1-272, to show cause or manner of death if it contains any expressions of opinions or conclusions by a person who has no personal knowledge of the facts. *See Edwards v. Jackson,* 210 Va. 450, 452-453 (1970) (construing Code § 32-353.27, the predecessor to Code § 32.1-272); *see also Bailey v. C. V.*

*Hunter, Inc.,* 207 Va. 123 (1966) (same); and K. Sinclair, *The Law of Evidence in Virginia* § 13-12[d] (8th ed. 2018) (same).

Further, we observe that when the General Assembly enacted Code § 8.01-390.2 with language identical to Code § 19.2-188, it did so with the knowledge of our aforementioned jurisprudence. *See* Acts 2003, ch. 459; *see also Townes v. Virginia State Bd. of Elections*, 299 Va. 34, 49 (2020) (explaining that when the legislature acts in an area in which an appellate court has spoken, it is presumed to know the law as the court has stated it and therefore to acquiesce in it, and if the legislature intends to countermand such appellate decision it must do so explicitly) (quoting *Weathers v. Commonwealth*, 262 Va. 803, 805 (2001) and citing *Lambert v. Sea Oats Condominium Ass'n, Inc.*, 293 Va. 245, 254 (2017)).

Therefore, in keeping with the reviewed precedent, we reject the Administrator's argument that Code § 8.01-390.2 should be construed as a mandate to admit expressions of opinion merely because they are included in a medical examiner's report regardless of any other rule of evidence. The statute provides an exception only to the evidentiary rule excluding hearsay evidence. [4] Its

---

[4] We also reject Lucas's additional argument that we should construe Code § 8.01-390.2 more liberally in light of the hearsay exception provided by Rule 2:803(8) of the Virginia Rules of Evidence, which provides in relevant part that:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . .
>
> (8) Public Records and Reports. – In addition to categories of government records made admissible by statute, records, reports, statements, or data compilations, in any form, prepared by public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed within the scope of the office or agency's duties, as to which the source of the recorded information could testify if called as a witness; generally excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel when offered against a criminal defendant.

effect is to make reports of investigations of the medical examiner "admissible as prima facie evidence of the facts stated therein, thus obviating the necessity of summoning as witnesses those persons performing the particular tests or investigations at issue." *Bass,* 212 Va. at 700. It does not, as we explained in *Bond*, provide an exception authorizing admission of expressions of opinion in a report that are derived from evidence, such as here, that the jury is just as well-equipped as the medical examiner to consider and draw its own conclusions. However, if the evidence was such that the jurors were not capable of comprehending and forming an intelligent opinion about it, and drawing their own conclusions, the opinion testimony of an expert based upon such facts and circumstances would be admissible, assuming it met all other evidentiary requirements. That simply is not the case here.

As Dr. Ohanessian acknowledged, the only investigation she was tasked with was to determine the cause and manner of Hilliard's death, which, respectively, she reported as "Blunt Force Trauma of Head" and "Accident." *See* Code § 32.1-183(B). The circuit court properly permitted those portions of Dr. Ohanessian's report as prima facie evidence of those facts without the need for her appearance or testimony, thereby effectuating the purpose of Code § 8.01-390.2.

## II. Medical Examiner's Expert Testimony

Next, the Administrator contends that the circuit court abused its discretion in excluding Dr. Ohanessian's designated expert testimony.

---

Assuming, arguendo, that the Rule permits the admission of a broader range of evidence than Code § 8.01-390.2, it is irrelevant under the facts here. To be excepted from the hearsay rule and be admissible, the Rule would require that Dr. Ohanessian's autopsy report contain "matters observed within the scope of the office or agency's duties, as to which the source of the recorded information could testify if called as a witness." As previously explained, Dr. Ohanessian testified that the challenged opinions were not matters she observed within the scope of her duties. Therefore, her testimony would not satisfy the requirements of the Rule in any event.

It is well-established that the admission or exclusion of expert testimony is a matter within the sound discretion of the circuit court, and we will reverse the circuit court's judgment only when the court has abused this discretion. *Keesee v. Donigan,* 259 Va. 157, 161 (2000). When we say that a circuit court has discretion, we do not mean that the court is free to simply act in any way it may deem desirable under the circumstances. *See, e.g.*, *Harris v. Citizens Bank & Tr. Co.*, 172 Va. 111, 144 (1939) (observing that a matter that is committed to the discretion of a trial court does not involve "arbitrary or capricious discretion, dependent upon the mere pleasure of the judge, but of that sound and reasonable discretion which governs itself, as far as it may, by general [legal and equitable] rules and principles"). Rather, we mean that the circuit court "has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Landrum v. Chippenham and Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011) (internal citations omitted).

As we have already recognized, the record reveals that Dr. Ohanessian based her opinion upon the facts and circumstances shown from the police report, photographs of the accident, roadway marks, debris, Hilliard's post-mortem blood analysis, and eyewitness testimony. These facts and circumstances are such that the jurors could comprehend them, form an intelligent opinion about them, and draw their own conclusions. *Bond*, 226 Va. at 537; *see also Lopez v. Dobson*, 240 Va. 421, 423 (1990) (holding that a "witness may describe the marks that he has observed near the place of an accident . . .[but] [t]he inference to be drawn from the testimony regarding such tire marks, skid marks, or scratches is solely the province of the jury"). Not only did Dr. Ohanessian rely on the police report to "tell [her] who . . . was driving in this case" she acknowledged that she was neither trained nor expected to recreate automobile accidents or make final conclusions about what caused the accident or the blunt force trauma to Hilliard's head. The

12

record also shows that Dr. Ohanessian could not say whether Hilliard suffered any adverse reactions to any of the medications found in his blood or if he was awake or asleep at the time the vehicle left the roadway.

Accordingly, we cannot say that the circuit court exceeded its range of discretion or that it was influenced by any mistake of law in excluding Dr. Ohanessian's testimony. *See Countryside Corp.,* 263 Va. at 553 (holding that expert testimony is inadmissible if it is speculative or without a proper foundation).

ASSIGNMENT OF ERROR 2

I. Family Medicine Physician's Expert Testimony

Dr. Rosa King, Hilliard's family medicine physician, testified that in November 2016, Hilliard complained of insomnia, sleep disturbances, depression, and fatigue. She ordered an at-home overnight sleep study, which Hilliard underwent on December 7 and 8, 2016. Dr. King explained that Hilliard's results were abnormal and she instructed her nurse to inform Hilliard, by telephone and mail, that "his oxygen did drop during the sleep test . . . enough to qualify . . . to have oxygen at nighttime." Dr. King stated that the test "was not a daytime test, so we can't – extrapolate to that. But for the overnight, [Hilliard] could have benefited from oxygen." Dr. King testified that she wanted Hilliard to see a sleep specialist right away for a formal evaluation of sleep apnea. Dr. King believed that Hilliard had been informed of his sleep test results and her recommendation for a follow-up, but the medical records indicated that Hilliard did not follow up.

The circuit court ruled that Dr. King's testimony was inadmissible at the time of the pre-trial hearing because it was "too attenuated," but its ruling was "without prejudice to [Lucas], by counsel, moving the Court to reconsider its ruling based on developments at trial."

Although the Administrator contends that the circuit court abused its discretion in excluding Dr. King's testimony, we conclude that she has waived this argument. Rule 5:25. The

circuit court's ruling to exclude Dr. King's testimony was without prejudice to a motion for reconsideration based on developments at trial. The Administrator proffered Dr. King's testimony at the outset of the trial; however, she did not move the court for reconsideration during the trial in accordance with the court's preliminary ruling. *See, e.g.*, *Wal-Mart Stores E., LP v. State Corp. Comm'n*, 299 Va. 57, 76 (2020) (observing that "[a] motion to reconsider ordinarily asks a court to reconsider a holding because, in the opinion of the movant, the holding was erroneous"). Therefore, the Administrator deprived the circuit court of an opportunity to make a final ruling on the admissibility of Dr. King's testimony in light of the evidence presented at trial and we will not consider the challenged ruling as a basis for reversal on appeal. *See Riverside Hosp., Inc. v. Johnson,* 272 Va. 518, 526 (2006) (finding that if the circuit court is not afforded the opportunity to address an issue there is no ruling on that issue and, thus, no basis for review or action by this Court); *Wal-Mart Stores*, 299 Va. at 76-77 (concluding that a motion for reconsideration "may . . . challenge a tribunal's failure to rule on an issue properly presented to it, particularly a timely but unadjudicated lesser-included claim," but that it may not "request to consider for the first time something the movant had never before specifically sought").

## II.   Refusal of Jury Instruction

The Administrator also assigns error to the circuit court's refusal of an instruction that would have informed the jury that "[a] person who falls asleep while driving is negligent." She contends that even without the excluded expert testimony, the eyewitnesses' testimony that the driver of the tractor-trailer did not apply the brakes, swerve or take any other evasive maneuvers as the vehicle left the roadway, along with the police officer's corroborating testimony that his investigation of the accident site and vehicle damage showed no skid marks, tire blowouts or other

14

mechanical explanations, was more than sufficient to permit the jury to infer that the driver may have fallen asleep at the wheel.

The credible evidence introduced in support of a requested jury instruction "must amount to more than a scintilla." *Hancock-Underwood v. Knight,* 277 Va. 127, 130-31 (2009). On appeal, we view that evidence in the light most favorable to the proponent of the instruction. *Id.* at 130. So viewed, the evidence that there were no equipment or mechanical failures perhaps lends itself to reasonable inferences about what did not cause the tractor-trailer to leave the roadway, but it does not reasonably follow that the only remaining reason would be because the driver may have fallen asleep. Likewise, the lack of evasive maneuvers is insufficient to permit jurors to infer, without improper speculation, that the driver may have fallen asleep. "It is incumbent on the plaintiff who alleges negligence to show why and how the accident happened, and if that is left to conjecture, guess or random judgment, he cannot recover." *McFadden v. Garrett,* 211 Va. 680, 683 (1971) (internal citations omitted).

Further, "[w]here the jury has been sufficiently and correctly instructed on any point, it is not error to refuse further instructions on that point, however correct a tendered instruction may be." *Harman v. Honeywell Intern., Inc.,* 288 Va. 84, 104 (2014) (internal citations omitted). The jury in the instant case was instructed that "the driver of a vehicle has a duty to use ordinary care: to keep a proper lookout; to keep his vehicle under control; and to operate his vehicle at a reasonable speed under the existing conditions. If a driver fails to perform any one or more of these duties, then he is negligent." We have said that "[t]o fall asleep at the steering wheel is a clear violation of the duty to keep a proper lookout." *Lipscomb v. O'Brien,* 181 Va. 471, 475 (1943). Thus, the principle set forth in the refused instruction was fully and fairly covered in the granted instruction.

15

ASSIGNMENT OF ERROR 3

I. Neurologist's Expert Testimony

The Administrator argues that the circuit court erred by excluding the proffered testimony of Dr. Robert Hansen, a neurologist, as an expert in sleep disorders. He opined to a reasonable degree of medical probability, based on a differential diagnosis, that Hilliard fell asleep while operating the tractor-trailer due to daytime sleepiness and fatigue from sleep apnea. Dr. Hansen testified that Hilliard's underlying untreated sleep problem was compounded by his use of sedating medications as seen in the toxicology report. He explained that there was no evidence for loss of consciousness from other medical causes, such as diabetes or a heart arrythmia, as there had been no problems with Hilliard's pacemaker. Dr. Hansen stated that although there are a number of things that can happen to people, such as an aneurysm or heart attack, when, as in this case, the person has known sleep problems and apparently falls asleep, the cause is sleep apnea.

On cross-examination, Dr. Hansen conceded that he would need to know, but did not know, how long a person had been taking a medication, whether he had developed a tolerance to it, the person's weight and whether it had changed. Dr. Hansen also admitted he did not know if Hilliard had taken any measures to address his sleep issues, such as losing weight or changing medications, and he conceded that the medications that were in Hilliard's blood had a long half-life, which meant he did not know the effect of the medications on Hilliard at the time of the accident. Likewise, Dr. Hansen did not know Hilliard's genetic ability to metabolize the medications on the day in question, which would be dependent on his hydration and how his kidneys were functioning that day.

The Administrator argues that Dr. Hansen's testimony was competent, probative medical evidence that would tend to make her theory of liability more likely. She adds that the defendants'

arguments against admission of this evidence go to the weight of Dr. Hansen's testimony, not its admissibility, and therefore the circuit court abused its discretion in excluding the testimony.

We do not agree. "Generally, when an expert examines facts and circumstances leading to an injury, his opinion as to the cause of the injury is not rendered factually unsupported by the possibility of another cause." *Toraish v. Lee* 293 Va. 262, 269 (2017). However, that is not so when, as here, an expert purports to eliminate all possible causes of the accident until only one remains. *Id.* When Dr. Hansen conceded that there was information he needed to know, but did not know, it rendered his differential diagnosis invalid and inadmissible because it was founded on assumptions that were not established. *Id*. at 270. Further, "[e]xpert testimony founded upon assumptions that have no basis in fact is not merely subject to refutation by cross-examination or by counter-experts; it is inadmissible." *Id.* at 269. Accordingly, we cannot say the circuit court abused its discretion in excluding the contested portions of Dr. Hansen's proffered testimony.

## II.  Trucking Safety Professional's Expert Testimony

The Administrator also argues that the circuit court erred in excluding the proffered testimony of James Crawford from Introtech Inc., an accident reconstruction service, who had been retained as an expert regarding regulations and industry standards of safety for the operation of commercial trucks, including issues of drowsiness and sleep deprivation and how those issues relate to the circumstances of the crash and deaths at issue. In sum, Crawford opined that there were no adverse causative factors associated with the vehicle, roadway or environment. He presented diagrams deduced from his review of the evidence to depict how he believed that the tractor-trailer left the roadway and concluded that it demonstrated how the driver failed to keep a proper lookout and drive safely. In his opinion, the accident was caused by a driver who was not normally alert due to being fatigued or because he fell asleep at the time of the crash. Crawford

further opined that the damage to the passenger door was caused by Lucas's ejection as the truck rolled over and that the location of Hilliard's body was consistent with him being the driver because he was able to hold on to the steering wheel while the tractor-trailer rolled over.

However, Crawford admitted that he did not take any measurements or conduct any tests to determine whether Lucas's body would fit through the window opening in the damaged door. Similarly, he conceded that whether Hilliard moved his arms after the tractor-trailer came to rest was indeterminate and that there was no data regarding what Hilliard may or may not have been doing inside the vehicle before anyone arrived on the scene.

As we explained above, when the facts and circumstances are such that jurors could comprehend them, form an intelligent opinion about them, and draw their own conclusions, the opinion of an expert based upon such facts and circumstances is inadmissible. *Bond*, 226 Va. at 537; *see also Lopez*, 240 Va. at 423 (holding that a "witness may describe the marks that he has observed near the place of an accident . . .[but] [t]he inference to be drawn from the testimony regarding such tire marks, skid marks, or scratches is solely the province of the jury"); and *Countryside Corp.,* 263 Va. at 553 (holding that expert testimony is inadmissible if it is speculative or without a proper foundation). Therefore, the circuit court did not abuse its discretion in excluding Crawford's opinions.

## CONCLUSION

For the foregoing reasons we find no abuse of discretion in the circuit court's evidentiary rulings and will affirm its judgment entered on the jury's verdict.

*Affirmed.*